**Manuel CARRO Rivera d/b/a Carro Enterprises, Plaintiff,**

**v.**

**PARADE OF TOYS, INC., Dennis Vaughan, personally and in his official capacity, Defendant.**

**Civil No. 96–1384 (JP).**

United States District Court, D. Puerto Rico.

Dec. 23, 1996.

**450**

Ricardo F. Casellas, Rodríguez & Casellas, San Juan, PR, for Plaintiff.

Arturo Díaz–Angueira, Roberto Feliberti, Cancio, Nadal, Rivera & Díaz, San Juan, PR, for Defendant.

### OPINION AND ORDER

PIERAS, District Judge.

Before the Court are the motion to dismiss of defendant Parade of Toys, Inc. ("Parade of Toys") (docket No. 10), plaintiff's brief response (docket No. 14) and complete opposition thereto (docket No. 19). Defendant's motion to dismiss, like plaintiff's opposition, includes documents not attached to the complaint, including the "International Distributor Application and Agreement Form" ("Distributor Agreement") that contains the arbitration clause that prompted the motion to dismiss. Plaintiff referred to this contract in the complaint and also in-

cluded a copy with his brief response to the motion to dismiss; defendant Parade of Toys also attached a copy to its motion to dismiss. Although there are minor differences between the copies of the Distributor Agreement submitted by each party, these differences relate to what the parties wrote on the pre-printed form, not the form itself. The plaintiff does not dispute that the Distributor Agreement that the parties signed contained an arbitration clause. This arbitration clause is identical in both the plaintiff's and defendants' copies of the Distributor Agreement. Accordingly, we treat the agreement as part of the pleadings for purposes of this motion to dismiss in favor of arbitration. *See Watterson v. Page,* 987 F.2d 1, 3–4 (1st Cir.1993) (although not attached to complaint, courts may treat as part of pleadings documents the authenticity of which is not disputed by the parties; official public records; documents central to plaintiffs' claim; or documents sufficiently referred to in the complaint).

### I. BACKGROUND

This is a diversity action to recover damages allegedly arising from the failed business relationship between plaintiff and defendants. Default was entered against defendant Dennis Vaughan, an International Sales Manager for Parade of Toys, sued in both his personal and official capacities, and is the subject of a pending motion to vacate. Defendant Parade of Toys has appeared and is represented by counsel.

### A. Plaintiff's Allegations

Plaintiff claims that around June or July, 1995, while at a trade show in San Juan, defendant Dennis Vaughan told plaintiff that Parade of Toys was authorized to sell Disney products. Defendant Vaughan allegedly told plaintiff he would be the "biggest, in fact, only Disney distributor in Puerto Rico." Unbeknownst to plaintiff, on July 5, 1995, defendants executed a dealer's contract with Vicky Vega Smith, d/b/a Fantasy Toys, to distribute toys in a geographical area that overlapped with plaintiff's. On July 22, 1995, plaintiff and defendants signed a contract, incorporating a map of Puerto Rico defining

plaintiff's area. Plaintiff initially paid $38,-900.00 for a level IV distributorship, which included 5,400 licensed Disney toys and 24 carrousels. Plaintiff signed a purchase order and paid Parade of Toys a deposit of $7,780.00 to secure the distribution area on July 22, 1995. Subsequently, plaintiff sought to upgrade to a level V distributorship for the additional amount of $10,000.00, based on expectations created by defendants. This upgrade was approved on August 23, 1995, without a purchase order. Plaintiff wired the balance of $42,120.00 to defendants on August 23, 1995.[1] The parties' agreement indicated that all shipments would be delivered within 45 days, although defendants orally represented that deliveries would be made sooner. Defendants did not comply with their obligation to ship 7,200 toys and 33 carrousels by October 9, 1995. Shipments were sporadic, untimely and incomplete. Others contained damaged merchandise. In November of 1995, defendants had failed to ship approximately fifty percent (50%) of the toys paid for and ordered by plaintiff. Time was of the essence because of the Christmas toy season. Plaintiff sent demand letters on October 10, 1995, November 15, 1995, and December 15, 1995, requesting performance and demanding restitution.

The complaint asserts four claims against Parade of Toys: 1) violation of Puerto Rico's Law 75, protecting exclusive distributors; 2) breach of contract in violation of Articles 1053 and 1054 of the Puerto Rico Civil Code; 3) fraudulent inducement, bad faith, negligent misrepresentations and conversion in violation of Articles 1054, 1057, 1059 and 1802 of the Puerto Rico Civil Code and Article 88 of the Puerto Rico Commerce Code; and 4) resolution. Dennis Vaughan is named as a defendant only with respect to the third claim.

### B. Defendants' Allegations

Defendant Parade of Toys admits that plaintiff met Dennis Vaughan in Puerto Rico during June or July of 1995, and that they had various interstate telephone conversa-tions. It also admits that on July 22, 1995, Parade of Toys and plaintiff executed a Distributor Agreement and plaintiff made a deposit of $7,780.00. Defendant concedes that the agreement between plaintiff and Parade of Toys was initially a level IV distributorship which required an investment of $38,-900.00. Finally, defendant Parade of Toys admits that plaintiff ultimately paid $49,-900.00 for 7,200 licensed Disney toys and 33 carrousels, although it denies knowing why plaintiff decided to upgrade. Defendant Parade of Toys claims that the parties agreed to submit any disputes to arbitration and accordingly, has moved to dismiss plaintiff's complaint.

## II. APPLICABLE LAW AND ANALYSIS

Section 2 of the Federal Arbitration Act declares that:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ..., or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2 (1970). This section is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

Arbitration is a matter of contract law and a party can only be made to submit to arbitration those disputes which he has agreed so to submit. *Painewebber Inc. v. Elahi*, 87 F.3d 589, 594 (1st Cir.1996) (citing *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). The question of arbitrability—whether the parties agreed to arbitrate a particular dispute—is an issue

---

1. Based on plaintiff's allegations, the total cost of the distributorship was $48,900.00 ($38,900.00 plus $10,000.00 to upgrade to a Level V distributorship). Since plaintiff made a deposit of $7,780.00 to secure the promised distribution area, it would appear that the balance owed was actually $41,120.00.

for judicial determination. *Id.* at 649, 106 S.Ct. at 1418–1419. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* In light of the liberal federal policy favoring arbitration agreements, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941 (collecting cases).

In *Prima Paint Corp. v. Flood & Conklin Manufacturing,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the United States Supreme Court held that a claim of fraud in the inducement of an entire contract containing a broad arbitration clause is for the arbitrators to decide. Where the arbitration clause is broad, federal courts should only adjudicate claims of fraud in the inducement of the arbitration clause itself. *Id.* at 403–404, 87 S.Ct. at 1805–1806.

■ The arbitration clause in this dispute appears in paragraph nine, page two of the Distributor Agreement, and states:

9. Governing Law and Jurisdiction:

Distributor and Company agree that this Purchase Order shall be deemed to be made under, and shall be construed in accordance with and governed by laws of the state of Kansas, and that any dispute arising under this Purchase Order shall be resolved through arbitration to be held in Kansas and in accordance with the arbitration rules of the American Arbitration Association.

As plaintiff correctly notes in his opposition, the arbitration clause refers only to disputes "arising under" "this Purchase Order." The cases defendant cites as mandating dismissal of plaintiff's claims in favor of arbitration involved broad arbitration clauses. Broad arbitration clauses contain language submitting to arbitration all disputes "arising under" or "relating to" an agreement. Such clauses have been held to encompass a variety of extra-contractual claims. *See, e.g., Mitsubishi Motors Corp. v.*

*Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (agreement to arbitrate "all disputes, controversies or differences which may arise between [parties] out of or in relation to [certain articles] of this Agreement or for the breach thereof" was sufficiently broad to encompass claims under the Sherman Act, Federal Automobile Dealers' Day in Court Act, Puerto Rico Dealers' Act and Puerto Rico antitrust and unfair competition statute).

■ In contrast, restrictive or narrow arbitration clauses such as the one at issue here, reflect an intent to arbitrate only a limited range of disputes. The phrase "arising under" is intended to cover only those disputes relating to the interpretation and performance of a contract. *Mediterranean Enter., Inc. v. Ssangyong Corp.,* 708 F.2d 1458, 1464 (9th Cir.1983). Which of plaintiff's claims involve disputes relating to the interpretation and performance of "this Purchase Order," and therefore "arise under" it? Although the arbitration clause is contained in the Distributor Agreement, it appears to refer to disputes arising under a separate document—signed on the same day as the Distributor Agreement—entitled "Product Order Form." The Product Order Form reflects, *inter alia,* plaintiff's name and address, the shipping address, the parties' agreement to a level IV distributorship, the total price for the distributorship, plaintiff's initial deposit of $7,780.00, the method of payment, and the balance owed. The Court finds that the arbitration clause's reference to "this Purchase Order" reflects an agreement to arbitrate disputes "arising under" the Product Order Form, not the Distributor Agreement.

■ Plaintiff's first claim is for violation of Puerto Rico's Law 75, P.R. Laws Ann. tit. 10, §§ 278–278d (1976). The first claim alleges that Parade of Toys "impaired its dealer's contract with plaintiff without just cause by appointing another distributor in violation of his contractual right of exclusivity, by refusing or failing to deliver all the merchandise ordered and paid by Manuel Carro, by failing to honor wholesale prices for the purchase of goods, and by failing to timely ship and

deliver all such merchandise within forty-five days of full payment as stipulated in the Agreement." These allegations relate to conditions enumerated in the Distributor Agreement, not the Purchase Order. Accordingly, they are not subject to arbitration.

Plaintiff's second claim is for damages for breach of contract for failure to deliver the merchandise by a certain date. This claim relates to Paragraph 4 of the Distributor Agreement, which states that all .

> toys described in this Purchase Order shall be shipped within forty-five (45) days of acceptance of this Purchase Order by Company except where delay may be caused by strikes, fire, material shortages, of [sic] Act of God. Shipping in all cases wil [sic] be effected without undue delay be Company.

Likewise, claim four, for resolution of the parties' agreement because of defendants' breach of the contract's essential obligation to ship and deliver all merchandise on a timely basis before a date certain, involves defendants' compliance with the conditions of the Distributor Agreement. Since these claims do not "arise under" the Purchase Order, they are not subject to arbitration.

Plaintiff's third claim, for damages for fraudulent inducement, bad faith, negligent misrepresentation and conversion do not relate to the interpretation and performance of a contract and therefore do not "arise under" the Product Order Form nor the Distributor Agreement. Courts have held that extra-contractual claims are not barred by narrow arbitration clauses referring only to disputes "arising under" an agreement. *See, e.g., id.* at 1465 (conversion claim not barred); *In re Kinoshita & Co., Ltd.,* 287 F.2d 951 (2nd Cir.1961) (fraud in the inducement of entire contract not barred); *but cf. S.A. Mineracao da Trindade–Samitri v. Utah Int'l, Inc.,* 745 F.2d 190 (2nd Cir.1984) (confining *In re Kinoshita* to its precise facts in light of policy announced in *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), that federal courts should be particularly solicitous of arbitration provisions contained in international agreements). Likewise, we hold that plaintiff's third claim is not arbitrable.

This determination does not conflict with the U.S. Supreme Court's holding in *Prima Paint,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270. *Prima Paint* is distinguishable in that it involved a broad arbitration clause that provided for arbitration of all disputes "arising under" or "relating to" the parties' agreement. In such a case, the Court held that the allegations of fraud in inducement of the entire contract were to be decided by the arbitrators. 388 U.S. at 404, 87 S.Ct. at 1806. Only if the allegations related to fraud in the inducement of the arbitration clause—an issue which goes to the making of the agreement to arbitrate—could the federal court proceed to adjudicate the claims. *Id.* As noted above, the case *sub judice* involves a narrow arbitration clause and therefore only covers disputes "arising under" the Purchase Order. A dispute involving allegations of fraud in the inducement of an entire contract do not "arise under" the contract. Moreover, plaintiff's fraud claim is not arbitrable even under the rule established in *Prima Paint* since plaintiff's allegation is that the arbitration clause was part of a scheme to defraud creditors by inducing them to contract for the sale of goods that defendants never intended to deliver. Counsel for defendant Parade of Toys admitted at the Initial Scheduling Conference that his client did not deliver $25,000 worth of toys that plaintiff had ordered and paid for. Taking all plaintiff's averments as true, the arbitration clause was integral to this scheme to defraud since it ensured that defrauded creditors, who were generally small business persons in Puerto Rico, would be unable to pursue their claims in a distant forum.

## III. CONCLUSION

As the Court finds that plaintiff's first, second and fourth claims arise under the Distributor Agreement and not the Product Order Form, they are not subject to arbitration. Plaintiff's third claim does not relate to the interpretation and performance of a contract, and therefore is not encompassed by the "arising under" language of the arbitration clause. For the foregoing reasons, de-

fendant Parade of Toys' motion to dismiss is hereby DENIED.

IT IS SO ORDERED.