**RCM TECHNOLOGIES, INC., Plaintiff,**

v.

**BRIGNIK TECHNOLOGY, INC., Stephen P. Blatnik, and Brigitte O'Brien, Defendants.**

**No. CIV. A. 00–2951(SSB).**

United States District Court, D. New Jersey.

March 19, 2001.

Steven Kudatzky, Helen Heifets, Bazelon Less & Feldman, P.C., Marlton, NJ, for Plaintiff.

Henry M. Price, Lowenstein Sandler, P.C., Roseland, NJ, Timothy D. Kelly, Jennifer L. Frisch, Kelly & Berens, P.A., Minneapolis, MN, Attorneys for Defendants.

## OPINION ON MOTION TO COMPEL ARBITRATION

BROTMAN, District Judge.

Plaintiff brought claims of breach of contract, fraud, unjust enrichment, and negligent misrepresentation against Defendants in the Superior Court of New Jersey. After removing the case on the basis of diversity of citizenship, Defendants ask this Court to compel arbitration and stay the legal proceeding. For the reasons stated below, Defendants' motion will be granted.

## I. *FACTUAL BACKGROUND*

This dispute arose out of the 1998 sale of Defendant Brignik Technology, Inc. ("BTI"), a computer consulting firm, to Plaintiff RCM Technologies, Inc. (RCM).

On September 15, 1998, Defendants Stephen Blatnik and Brigitte O'Brien, BTI's owners, entered into an asset purchase agreement whereby RCM agreed to buy BTI for $6 million. RCM paid $3 million of the purchase price up front. The remaining $3 million was subject to certain post-closing adjustments, based on performance targets set forth in the purchase agreement, and payment was to be deferred to one year after closing.

Two provisions of the purchase agreement are at issue here. First, in paragraph 5.23 of the agreement, BTI represented that its closing net operating income ("CNOI") was not less than $1.1 million. Second, in paragraph 10 of the agreement, the parties agreed to submit to mandatory and binding arbitration any dispute that "arises as to interpretation of this Agreement."

Defendants requested payment of the deferred consideration on October 6, 1999. The next month, RCM responded that it had doubts about whether the CNOI was in fact $1.1 million or greater and that it intended to conduct an audit. RCM also stated that it would withhold the deferred consideration until the matter was resolved. On April 21, 2000, BTI served an arbitration claim on RCM. RCM filed the instant complaint on May 12, 2000.

## II. *DISCUSSION*

### A. **Legal Standard**

Section 2 of the Federal Arbitration Act ("FAA") states:

A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such a contract ..., or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This section is a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). FAA § 4 enables a litigant to petition a federal district court to force a reluctant party into arbitration, provided the court would otherwise have jurisdiction over the controversy. 9 U.S.C. § 4. Finally, FAA § 3 authorizes the court to stay the legal proceeding once it has compelled arbitration. 9 U.S.C. § 3.

As a matter of contract, no party can be forced to arbitrate a dispute unless that party has entered into an agreement to do so. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). FAA § 4 therefore requires that, before compelling an unwilling party to arbitrate, the court engage in a limited review to ensure that the parties' dispute is arbitrable—i.e., that a valid agreement to arbitrate exists and that the specific dispute falls within the substantive scope of that agreement. *Id.* at 649, 106 S.Ct. at 1418–19; *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 510 (3d Cir. 1990).

In light of the federal policy favoring arbitration agreements, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. at 941. Thus, there is a presumption of arbitrability "in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that

covers the asserted dispute.'" *AT & T Technologies*, 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Nevertheless, while "[g]enuine interpretive disputes" should be resolved in favor of arbitrability, "a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt." *Hartmann*, 921 F.2d at 512–13.

▪ In assessing whether a dispute falls within the scope of an arbitration clause, the court's focus "is on the 'factual allegations in the complaint rather than the legal causes of action asserted.'" *Mutual Benefit Life Ins. Co. v. Zimmerman*, 783 F.Supp. 853, 868 (D.N.J.1992) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir.1987)); *see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 622 n. 9, 105 S.Ct. 3346, 3351 n. 9, 87 L.Ed.2d 444 (1985). "If the allegations of the complaint involve matters covered by the parties' underlying agreement, the claims must be arbitrated, regardless of the legal labels ascribed to the claims." *Zimmerman*, 783 F.Supp. at 868.

In this case, the parties do not contest that a valid arbitration agreement exists between them. The sole issue before the Court is whether it may say with "positive assurance" that Plaintiff's claims fall outside the scope of that agreement. The parties have chosen to analyze separately the fraudulent inducement claims (fraud and negligent misrepresentation) and the unjust enrichment claim, and the Court will do the same. Thereafter the disposition of the breach of contract claim must also be determined.

### B. Fraud and Negligent Misrepresentation Claims

Defendants rely on *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), for the proposition that claims of fraud in the inducement of a contract are subject to arbitration. In *Prima Paint*, the Supreme Court construed a portion of FAA § 4, which reads, in relevant part:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4. The Court interpreted this provision to mean that "if the claim is fraud in the inducement of the contract itself ... the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of contracts generally." *Prima Paint*, 388 U.S. at 403–04, 87 S.Ct. at 1806. Defendants contend that this pronouncement mandates arbitration of Plaintiff's fraud and negligent misrepresentation claims, since Plaintiff does not allege fraud in the inducement specific to the arbitration clause.

The rule of *Prima Paint* is of limited application, however. The contract in that case contained a clause providing for arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof." *Id.* at 398, 87 S.Ct. at 1803. In contrast to that broad provision, the clause at issue in this case provides only for arbitration of disputes that "arise[ ] as to interpretation" of the contract. Courts have consistently drawn a distinction between "narrow" clauses covering disputes "arising under" a contract and "broad" clauses covering disputes "arising under" as well as "relating to" the agreement. *See, e.g., Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir.1998); *Medi-*

*terranean Enters. v. Ssangyong Corp.,* 708 F.2d 1458, 1463–64 (9th Cir.1983); *Carro v. Parade of Toys, Inc.,* 950 F.Supp. 449, 453 (D.P.R.1996); *Michele Amoruso E Figli v. Fisheries Dev. Corp.,* 499 F.Supp. 1074, 1080 (S.D.N.Y.1980).[1] The Court in *Prima Paint* held that in the case of a broad clause, FAA § 4 mandates that allegations of fraud in the inducement of the entire contract be decided by arbitrators, not a court. *Carro,* 950 F.Supp. at 453. But *Prima Paint* does not require arbitration of a fraudulent inducement claim where parties have specifically ruled out such a result by agreeing to a narrow arbitration clause. *See id.; Figli,* 499 F.Supp. at 1080. The limited nature of the *Prima Paint* holding is consistent with the language of FAA § 4 and evident, albeit not explicit, in the Supreme Court's analysis. Section 4 mandates court-ordered arbitration only to the extent that it is "in accordance with the terms of the agreement." 9 U.S.C. § 4; *Prima Paint,* 388 U.S. at 404 n. 11, 87 S.Ct. at 1806 n. 11. Accordingly, after construing FAA § 4, the Court also reviewed the arbitration clause and determined that it was broad enough to encompass a fraudulent inducement claim. *See Prima Paint,* 388 U.S. at 406, 87 S.Ct. at 1807. Because the arbitration clause at issue here is substantially narrower than the clause in *Prima Paint,* the Court declines to compel arbitration of the fraudulent inducement claims on the basis of that case.

Taking a different tack, Plaintiff argues that the instant arbitration clause is at least as narrow as clauses in several cases in which courts deemed fraudulent inducement claims inarbitrable. *See Midwest Window Sys. v. Amcor Indus., Inc.,* 630 F.2d 535, 535 (7th Cir.1980) (clause requiring arbitration of any dispute concerning the interpretation or application of any of the provisions of the agreement); *Carro,* 950 F.Supp. at 452 (provision requiring arbitration of "any dispute arising under this purchase order"); *Mutual Benefit Life Ins. Co. v. Zimmerman,* 783 F.Supp. 853, 866 (D.N.J.1992) (provision mandating arbitration of "any dispute ... arising with reference to the interpretation, application, or other effect of this agreement" as a "condition precedent to any right of action arising" under the agreement); *Baker v. Paine, Webber, Jackson & Curtis, Inc.,* 637 F.Supp. 419, 421 (D.N.J.1986) (provision requiring arbitration of "[a]ny controversy arising out of the handling of any of the transactions referred to in this agreement"); *Figli,* 499 F.Supp. at 1080 (provision requiring arbitration of "disputes arising out of this Agreement"); *Kimberly Area Sch. Dist. v. Zdanovec,* 222 Wis.2d 27, 42–43, 586 N.W.2d 41, 48 (Wis.App. 1998) (provision requiring arbitration where "differences arise ... concerning the meaning, interpretation, and application of the provisions of this Agreement").

As an initial matter, four of the cases Plaintiff cites are inapposite.[2] More im-

---

1. The arbitration clause at issue here is in fact narrower than the typical "narrow" clause, in that it does not apply to all claims "arising under" the contract; rather, it applies only to issues of interpretation that arise under the contract.

2. In *Amcor,* the court did not pass judgment on the arbitrability of a fraudulent inducement claim, but instead found that the defendant had waived its right to seek arbitration. *Amcor,* 630 F.2d at 537. The court in *Carro* held that the misrepresentations were not ar-

bitrable because they were not a part of the agreement containing the arbitration clause-as was the alleged fraud in this case. *Carro,* 950 F.Supp. at 452–53. Similarly, in *Zdanovec,* the alleged misrepresentations were not in the agreement itself, but in a separate agreement that did not contain an arbitration clause. *Zdanovec,* 222 Wis.2d at 42–43, 586 N.W.2d at 48. Finally, in *Figli,* the court did not compel arbitration of the fraud claim because the basis for the claim—the contract's alleged illegality—was a legal issue to be de-

portantly, however, Plaintiff and Defendants err in their analysis to the extent that they seek to classify all claims in the category of fraudulent inducement as outside the scope of a particular kind of arbitration clause. The question the Court must ask is whether the particular factual allegations underlying Plaintiff's fraudulent inducement claims are covered by the purchase agreement's arbitration clause. *Zimmerman*, 783 F.Supp. at 868. The other two cases Plaintiff cites—both of which did result in a finding that the claims were inarbitrable—are representative of this fact specific approach. In *Zimmerman*, which involved an arbitration clause similar in scope to the one at issue here, the court found that the fraud allegations would require an analysis of the defendant's intent and conduct, not of the parties' agreement. *See id.* at 873. And in *Baker*, which involved a clause limiting arbitration to disputes over the handling of transactions referred to in the agreement, the court found that those transactions were unrelated to the fraud allegations. *Baker*, 637 F.Supp. at 419–420.

■ In this case, Plaintiff's fraudulent inducement claims center on BTI's representation in the agreement that the CNOI, the company's closing net operating income, was not less than $1.1 million. The parties vigorously dispute whether litigation of these claims would invoke matters covered by the arbitration clause—viz., interpretation of the purchase agreement. Defendants contend that resolving these claims would inevitably involve interpretation of the agreement's definition of CNOI. Plaintiff counters that CNOI was exhaustively defined in the agreement and that all that is left is to calculate it.

Paragraph 1 of the purchase agreement defines CNOI as:

> Annualized operating income of Seller for the period March 1, 1998 to July 31, 1998 as reflected in Seller's financial statements reflecting all appropriate balance sheet accruals and deferrals prepared in accordance with the requirements of GAAP [generally accepted accounting principles] before federal and state taxes but after deducting $200,000 in executive compensation

The Court is persuaded that Plaintiff's fraudulent inducement claims are subject to arbitration. Unlike the claims in *Zimmerman*, the claims in this case almost undoubtedly will require interpretation of the parties' agreement. While from Plaintiff's viewpoint determining CNOI is solely a matter of calculation, Plaintiff fails to recognize that Defendants will logically wish to raise all defenses at their disposal, including the possibility that they held different views as to the meaning of CNOI. The meaning of several terms in the purchase agreement's CNOI definition could be the subject of disagreement. The parties may calculate CNOI differently based on each's understanding of what constitutes an "appropriate" balance sheet accrual or deferral. This difference of opinion may extend to whether a particular accounting practice conforms with generally accepted accounting principles. Similarly, the parties may also possess different views as to what is meant by "annualized operating income," which is not defined anywhere in the purchase agreement. Notably, Plaintiff might have eliminated these questions from consideration had it set forth more completely in the complaint the nature of the alleged inaccuracy of Defendants' CNOI representation. As it stands, Plaintiff has not provided any details demonstrating that the dispute really involves issues other than interpretation. Because the Court cannot say with positive assur-

cided by the court. *Figli,* 499 F.Supp. at 1084.

ance that the allegations fall outside the area of contract interpretation, Plaintiff's fraudulent inducement claims must be arbitrated.[3]

### C.  Unjust Enrichment Claim

Having determined that Plaintiff's fraudulent inducement claims are arbitrable, the Court must decide whether a different result should obtain with respect to the unjust enrichment claim. Plaintiff, citing *In re Prudential Insurance Co. of America Sales Practices Litigation,* 975 F.Supp. 584 (D.N.J.1996), argues that this claim is not subject to the purchase agreement's arbitration clause because recovery on a theory of unjust enrichment is predicated on the absence of a valid agreement. *In re Prudential,* however, dealt only with the question of whether alternative pleadings of breach of contract and unjust enrichment are allowed.[4]  A number of courts have held that unjust enrichment claims are arbitrable, provided the contract's arbitration clause is broad enough to cover such claims. *See, e.g., CPR v. Spray,* 187 F.3d 245, 256 (2d Cir.1999); *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,* 117 F.3d 655, 668 (2d Cir.1997); *Genesco,* 815 F.2d at 854; *Nissho Iwai v. Marinera S.A.,* No. 95–3771, 1996 WL 904562, at *5 (D.N.J. April 23, 1996). Although each of these cases involved an arbitration clause broader than the one at issue here, *Campaniello* and *Genesco* make clear that the focus of the analysis—as was the case with the fraudulent inducement claims—is on whether the factual allegations underlying the claim touch matters covered by the parties' agreement. *Campaniello,* 117 F.3d at 668; *Genesco,* 815 F.2d at 846. In this case, the factual issue underpinning all of Plaintiff's claims, including the unjust enrichment claim, is the accuracy of Defendant's CNOI representation. Because the outcome of that question is likely to depend at least in part on the interpretation of the CNOI definition, as is discussed above, the Court finds that the unjust enrichment claim must be arbitrated as well.

### D.  Breach of Contract Claim

Neither party specifically addresses the breach of contract claim. However, the same analysis should govern here. Because this claim will also place in issue the interpretation of the purchase agreement's CNOI definition, it too must be arbitrated.

## III.  *CONCLUSION*

For the reasons stated herein, Defendants' motion to compel arbitration and stay the instant legal proceeding will be granted. The Court will enter an appropriate order.

---

**3.**  Defendants have also presented an alternative ground for compelling arbitration. In their reply brief, Defendants raised for the first time the argument that Plaintiff cannot avoid arbitration with a defective fraudulent inducement defense. Specifically, Defendants contend that Plaintiff has failed to plead its fraudulent inducement claims with the particularity required by Federal Rule of Civil Procedure 9(b). Plaintiff responded with a motion to strike this new argument as improper, or, in the alternative, for leave to file a sur-reply brief. Because the Court finds the fraudulent inducement claims arbitrable based on the parties' initial arguments, it need not address either the motion to strike or the merits of Defendants' Rule 9(b) argu-

ment. Of course, the Court's own analysis has called into question the particularity of Plaintiff's fraud allegations. However, that analysis serves solely to demonstrate that interpretational questions cannot be ruled out as issues in this case; it is not intended as an assessment of the sufficiency of Plaintiff's claim under Rule 9(b).

**4.**  The court noted that once a contract is deemed enforceable—for example, at the summary judgment stage—the accompanying unjust enrichment claim must be dismissed. *Id.* But the court stated that such claims should not be dismissed prior to a determination as to the contract's validity. *See id.* at 621–22.

## ORDER ON MOTION TO COMPEL ARBITRATION

**THIS MATTER** having come before the Court upon Defendants' motion to compel arbitration and stay the instant legal proceeding;

The Court having reviewed the record and the submissions of the parties;

For the reasons stated in the Court's opinion of this date;

**IT IS** this *20th* day of March, 2001, **HEREBY**

**ORDERED** that the parties shall immediately implement arbitration of the claims set forth in Plaintiff's complaint, in accordance with paragraph 10 of the parties' September 15, 1998, purchase agreement;

**IT IS FURTHER ORDERED** that this legal proceeding is stayed and administratively terminated pending the outcome of the arbitration.