**Aaron D. BANNETT, M.D., Plaintiff**

v.

**Mark HANKIN, Ind. and d/b/a Hankin Management Company and Hankin Management, Inc., Defendants**

**No. Civ.A. 03–CV–5976.**

United States District Court, E.D. Pennsylvania.

Aug. 16, 2004.

---

Michael S. Bomstein, Pinnola & Bomstein, Philadelphia, PA, for plaintiff.

Craig Robert Lewis, Michelle S. Walker, Braverman Daniels Kaskey, Ltd, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Via the motion now pending before this Court, Defendants move to dismiss the Plaintiff's complaint pursuant to Fed. R.Civ.P. 12(b)(1) on the grounds that the dispute is subject to a mandatory arbitration provision. For the reasons outlined below, the motion shall be GRANTED.

### Factual Background

This case arises out of two real estate partnerships in which Plaintiff Dr. Bannett ("Plaintiff") had purchased limited partnership interests in 1983. Those partnerships, HanMar Associates XV and XIX ("HanMar Partnerships"), were formed by the defendant Mark Hankin, who was first the vice president, and then the president and secretary of the general partner for each partnership, Industrial Real Estate Management, Inc. ("IREM") and the co-owner of the rental properties which were the subject of the real estate partnerships. (Complaint, ¶ s 6,7,8).

Under the terms of the offering memorandum and subscription agreements for the partnerships, investors such as Plaintiff were to pay for their ownership units by making a down payment and signing an investor note requiring annual payments to the HanMar partnership over a six-year period and in exchange, *inter alia*, the limited partners were to receive certain "preferred distributions," defined as

> "an amount equal to an annualized 8% return on cash contributed to the Partnership by the Investors. This return is cumulative and shall be paid prior to the payment of all obligations except the principal payments due under the First Note and the minimum payments due under the Second Note."

(Complaint, ¶ s 11, 12).

Plaintiff further avers that under § 5.3 of the limited partnership agreements, Mr. Hankin and IREM agreed that payment of the preferred distributions was to be made prior to nine other obligations and that Mr. Hankin was personally responsible for payment of a variety of HanMar obligations, regardless of whether there was sufficient cash flow. (Complaint, ¶ s 19–23).

The subscription agreement also provided for HanMar to (a) execute a First Note in order to purchase 50% of certain industrial real estate owned by Mark Hankin; (b) execute a Second Note that represented wrap financing of the existing institutional lender mortgage loans on the real estate and permitted Hankin an approximately 6% interest rate premium; (c) enter into a management and leasing ("M & L") agreement with Hankin Management Company ("HMC"); and (d) enter into a Maintenance Agreement with Mark Hankin to provide contracting services for the properties. (Complaint, ¶ 18).

In October, 1987, IREM and Hankin sent to Plaintiff and other limited partners a proposal to consolidate the two partnerships in which Plaintiff had ownership interests together with five other HanMar partnerships into a single HanMar Master Limited Partnership and to make various

other changes in the operation of the limited partnerships. According to Plaintiff, while there were seven distinct purposes for the proposed exchange, not one of them included subordination of the preferred distributions, modification of § 11.7 of the partnership agreements (which until then required 100% of the investors to approve changes in the amendment process), vesting the General Partner with absolute discretion to alter the order and priority of disbursements or creating a definition of "cash receipts" that would permit Mark Hankin to collect interest accruals and other monies at real estate settlements prior to paying overdue preferred distributions. (Complaint, ¶s 26, 27). Plaintiff and other limited partners voted in favor of the proposals and were advised that the HanMar limited partnership agreements were amended with at least 75% of the partners in favor. Plaintiff now alleges that all of the partners did not vote in favor of amending § 11.7 and, therefore, the proposal to permit future amendments to be made without approval of any of the limited partners was in fact defeated.

Nevertheless, Plaintiff was informed that all of the amendments had passed, and as a result, all seven HanMar entities were consolidated into a single HanMar Master Limited Partnership ("MLP") and the Manager was changed to Hankin Management Company, Inc. (of which Mark Hankin is the president and secretary). In addition, the amendments did the following: (a) altered the priorities for disbursements as set out in the partnership agreements, subordinating preferred distributions further than allowed in the 1983 documents; (b) approved a revised M & L agreement that set out priorities for cash disbursements that subordinated preferred distributions further than in the concur-

rent partnership agreement; (c) changed § 11.7(b) of the partnership agreement, thereby vesting the General Partner with absolute discretion to alter the order and priority of disbursements; and (d) defined "cash receipts" to permit Mark Hankin to collect interest accruals and other monies at real estate settlements prior to paying preferred distributions. (Complaint, ¶s 31–34).[1]

In 1991, Hankin advised Plaintiff that there had been an economic downturn in the real estate market that was worsening and not expected to turn around anytime soon. From that point on, the 8% preferred distributions were not made, despite the fact that in 2000, IREM sent a letter advising that the market had recently turned upward, the vacancy rate had diminished and that the partnership had received an infusion of cash from refinancings and sales of various properties. (Complaint ¶s 37–38). Unbeknownst to Plaintiff, by letter dated October 3, 2000, Mr. Hankin advised HanMar investor Martin Brody that the 8% preferred distribution would only be payable after all other obligations of the partnerships were paid. (Complaint ¶ 39). Plaintiff later learned that under an amendment to the MLP agreement dated January 2, 1991, the preferred distributions were subordinated to virtually all other payments. (Complaint ¶s 42–44). Plaintiff believes that the 1991 amendments were all executed by Mark Hankin only, in his capacity as president and secretary of IREM or as co-owner of the real estate, or as manager under the M & L agreements. (Complaint ¶ 45).

Plaintiff filed a complaint in this matter against Mark Hankin, both in his individual capacity and as sole proprietor of Hankin Management Company ("HMC"), and

---

1. These alterations effectively allowed the general partner to unilaterally make amendments to the master limited partnership agreement.

Hankin Management Company, Inc. ("HMI") seeking recovery of his pro rata share of preferred distributions, $15,760 per year from mid–1991 to the present. Specifically, Plaintiff brings claims for conversion, breach of contract, and unjust enrichment against Mark Hankin and HMI, as well as breach of fiduciary duty and civil RICO violations against Mark Hankin. Plaintiff contends that the Defendants unlawfully converted the partnerships' cash receipts through Hankin's collection of interest accruals and the reimbursement of expenses paid by HMI prior to the payment of the preferred distributions. The collection of the interest accruals was not only a breach of Hankin's fiduciary duties, alleges Plaintiff, but also constituted a breach of the 1983 and 1988 M & L agreements,[2] the 1983 and 1988 maintenance agreements,[3] and the First and Second Notes.[4]

### Applicable Standards

Defendants move to dismiss all claims brought against them on the basis that they are subject to the mandatory arbitration provision of the HanMar partnership agreements and/or the HanMar MLP agreement.

■ Under the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq.*, agreements to arbitrate are enforceable to the same extent as other contracts. *Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 263 (3d Cir.2003); *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 179 (3d Cir.1998). Section 2 of the Act provides, in relevant part: "A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a strong federal policy in favor of the resolution of disputes through arbitration. *Alexander*, 341 F.3d at 263. If a party to a binding arbitration agreement is sued in federal court on a claim that the plaintiff has agreed to arbitrate, he is entitled under the FAA to a stay of the court proceeding pending arbitration and an order compelling arbitration. 9

2. The 1983 M & L agreements provided that the manager, HMC (the fictitious name through which Mark Hankin was doing business), had to make disbursements first on the Second Note, second for the preferred disbursement to the HanMar partnerships, and thereafter for other HanMar obligations. Under the Partnership Agreements, each limited partner was to receive a preferred distribution in an amount equal to his percentage interest multiplied by the preferred disbursement described in the M & L Agreement. Therefore, the limited partners did not receive their preferred distributions directly from HMC.

The 1988 M & L Agreement subordinated preferred disbursements (payable to HanMar MLP) to "Owner's Obligations" and "Third Party Payments" as well as certain payments on the Notes.

3. Under the 1983 Maintenance Agreements, Mark Hankin's right to receive compensation

as "Contractor" under the agreements, was subordinate, *inter alia*, to the rights of the "Owners" (Mark Hankin and the HanMar Associates partnerships) to receive disbursements in accordance with the M & L agreements (i.e., disbursements on the Second Note and preferred disbursements). Under the 1988 Maintenance Agreement, Mark Hankin's right to receive compensation was still subordinate to certain payments under the 1988 M & L Agreement, but as explained in note 2 *supra*, the preferred distributions had been subordinated further in the 1988 M & L Agreement.

4. Under the notes, nearly all debt, including the accrued interest on the partners' debt to Mr. Hankin, was subordinate to the preferred distributions. The terms of the notes never changed and were never amended by any document.

U.S.C. §§ 3–4; *Alexander,* 341 F.3d at 263. If all of the claims are arbitrable, a court may dismiss the entire action. *See Blair v. Scott Specialty Gases,* 283 F.3d 595 (3d Cir.2002).

■ As a matter of contract, no party can be forced to arbitrate unless that party has entered into an agreement to do so. *See PaineWebber Inc. v. Hartmann,* 921 F.2d 507 (3d Cir.1990). Therefore, before a court can dismiss a suit and compel an unwilling party to arbitrate, it must conduct a limited review to ensure that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the scope of that agreement. *Id.* at 511.

### Discussion

### A. Defendants' Standing to Enforce Arbitration Provisions

■ It is Plaintiff's position that Defendants, as non-signatories to the limited partnership agreements and the MLP agreement, lack standing to enforce the arbitration provisions contained therein. Section 11.5 of the Amendment and Restatement of Articles of Limited Partnership of HanMar Associates XV and XIX ("1983 limited partnership agreement") reads as follows:

> 11.5 *Arbitration*—Any controversy or claim arising out of, or relating to this Agreement, or the breach thereof, shall be settled by arbitration in the Commonwealth of Pennsylvania, in accordance with the then rules of the

American Arbitration Association, and the decision or award rendered by the arbitration shall be final, binding and conclusive upon the parties hereto and judgment upon such decision or award may be entered in any Court having jurisdiction hereof.[5]

There is no dispute that neither Mark Hankin in his individual capacity nor HMI is a signatory to any of the limited partnership agreements or the HanMar MLP agreement. Likewise, there is no dispute that Plaintiff is bound to the terms of the 1983 limited partnership agreements. (Complaint ¶s 17–18). Thus, the first issue we must decide is whether nonsignatories Mark Hankin and HMI can compel signatory Plaintiff to arbitrate his claims against them.

■ Several courts of appeals have recognized an estoppel theory whereby nonsignatories to an arbitration agreement have standing to compel arbitration against a signatory and the signatory is estopped from avoiding arbitration with a nonsignatory when the issues which the nonsignatory wants to resolve are intertwined with the agreement that the signatory signed. *See Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524 (5th Cir. 2000); *McBro Planning and Dev. Co. v. Triangle Elec. Const. Co., Inc.,* 741 F.2d 342 (11th Cir.1984). This theory applies when a signatory to the written agreement must rely on the terms of the agreement to assert its claims against the nonsignatory such that the signatory's claims make

5. The arbitration provisions in the Second Amendment and Restatement of Articles of Limited Partnership of HanMar Associates XV and XIX and the Amendment and Restatement of Articles of Limited Partnership of HanMar Associates MLP are substantially similar. Section 11.5 of these agreements all read as follows:

> Any controversy or claim arising out of, or relating to this Contract, or the breach

thereof, shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association or the rules of Judicate, Inc., as the General Partner solely at its option may select. The judgment rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof and shall be binding and unappealable.

reference to or presume the existence of the written agreement, or the signatory's claims arise out of and relate directly to the written agreement. *See MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999); *see also Domke on Commercial Arbitration* § 13:8 (2003).[6]

We believe that this is a proper case to apply the estoppel theory. The only compensatory damages Plaintiff seeks is the preferred distributions allegedly due to him under the 1983 partnership agreements. As acknowledged by Plaintiff throughout his complaint and response to Defendant's motion to dismiss the complaint, the failure to pay the preferred distributions after 1991 was predicated on the alleged amendments to the MLP agreements, the limited partnership agreements, as well as the new M & L agreements and maintenance agreements. In addition, Plaintiff's RICO claim alleges that the enterprise consists of "at least Mark Hankin, HMI, and IREM," yet Plaintiff elected not to sue IREM directly, presumably an attempt to make an end-run around the arbitration clause. Because all of Plaintiff's claims make reference to or presume the existence of the partnership agreements and relate directly to those agreements, specifically Plaintiff's right to receive preferred distributions, we find that Defendants have standing to compel the Plaintiff to arbitrate those claims that are encompassed by the arbitration provisions.

## B. Do Plaintiff's Claims Fall within the Scope of the Arbitration Provisions?

■ The FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Battaglia v. McKendry,* 233 F.3d 720, 727 (3d Cir.2000). Moreover, the "presumption [in favor of arbitrability] is particularly applicable where the [arbitration] clause is ... broad." *AT & T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). When determining whether a given claim falls within the scope of an arbitration agreement, a court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir.1987); *see also RCM Technologies, Inc. v. Brignik Technology, Inc.,* 137 F.Supp.2d 550, 553 (D.N.J.2001).

The arbitration provision in the Amendment and Restatement of Articles of Limited Partnership of HanMar Associates XV and XIX ("1983 limited partnership agreement") is quite broad. Section 11.5 reads as follows:

> 11.5 *Arbitration—Any controversy or claim arising out of, or relating to this Agreement,* or the breach thereof,

---

**6.** In *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.,* 269 F.3d 187 (3d Cir.2001), the Third Circuit acknowledged with approval a similar estoppel theory. Specifically, the Third Circuit noted that courts have bound a signatory to arbitrate with a non-signatory "at the nonsignatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract ... and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations." *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.,* 269 F.3d 187, 199–200 (3d Cir.2001) (quoting *Thomson–CSF, S.A. v. American Arbitration Assoc.,* 64 F.3d 773, 778 (2d Cir.1995) (internal quotations omitted)). The Third Circuit further noted that this theory arose out of a series of cases in which signatories were held to arbitrate related claims against parent companies whose corporate subsidiaries, but not themselves, were signatories to the arbitration agreement. *Id* at 201.

shall be settled by arbitration in the Commonwealth of Pennsylvania, in accordance with the then rules of the American Arbitration Association, and the decision or award rendered by the arbitration shall be final, binding and conclusive upon the parties hereto and judgment upon such decision or award may be entered in any Court having jurisdiction hereof. (Emphasis added).

Upon review of the allegations in Plaintiff's Complaint, we think it is clear that all of Plaintiff's claims are arbitrable. First, Plaintiff's sole allegation of damages is the failure to receive preferred distributions, as provided for in the partnership documents, from mid–1991 through the present. (Complaint ¶s 66, 73, 86, 90, 94, 100, 106). The elimination of the preferred distributions, as Plaintiff reiterates throughout his complaint, was accomplished through the 1988 amendments to the partnership agreements, which Plaintiff alleges were void ab initio, and the 1991 amendments, which Plaintiff alleges were either phony or void because they were based on the 1988 amendments. (Complaint ¶s 52, 54). According to Plaintiff, the 1991 Amendments were executed by Mark Hankin only, possibly in his capacity as president and secretary of IREM. (Complaint ¶ 45). Clearly, the propriety of the 1988 and 1991 amendments to the limited partnership agreements and the creation of the MLP agreement, all of

which authorized the General Partner to enter into the 1988 and 1991 M & L agreements,[7] is an issue within the scope of the arbitration provisions. It is readily apparent that the basis for all of Plaintiff's claims is the elimination or deferral of the preferred distributions. (Complaint ¶s 54, 63, 72, 84, 89, 92, 100, 106, 117). Plaintiff's right to receive distributions undoubtedly arises out of the applicable partnership agreements, and not the M & L agreements, maintenance agreements, or the Notes. (Complaint ¶s 12, 20). Therefore, we find that Plaintiff's claims of conversion, breach of contract, and unjust enrichment[8] against Mark Hankin and HMI, and the claims of breach of fiduciary duty and civil RICO violations[9] against Mark Hankin are subject to the mandatory arbitration clause.

An appropriate Order follows.

### ORDER

AND NOW, this     day of August, 2004, upon consideration of the Motion of the Defendants to Dismiss Plaintiff's Complaint (Document No. 6), Plaintiff's Answer to Motion to Dismiss Complaint (Document No. 7), and the parties' supplemental responses, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the Motion is GRANTED and Plaintiff's Complaint is DISMISSED.

7. Section 4.1 of the Second Amendment and Restatement of Limited Partnership Agreement of HanMar Associates XV and XIX specifically authorizes the General Partner to enter into related party agreements, including but not limited to the HanMar MLP Agreement and the Management and Leasing Agreement. Section 6.2 of the HanMar MLP Agreement similarly authorizes the General Partner to enter into the Management and Leasing Agreement.

8. Unjust enrichment claims have been held to be arbitrable, provided the underlying factual allegations "touch matters covered by the parties' agreement." *RCM Technologies, Inc. v. Brignik Technology, Inc.,* 137 F.Supp.2d 550, 556 (D.N.J.2001).

9. Civil RICO claims have been held to be arbitrable. *See e.g., PacifiCare Health Systems, Inc. v. Book,* 538 U.S. 401, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003); *UMC Petroleum Corporation v. J & J Enterprises, Inc.,* 758 F.Supp. 1069 (W.D.Pa.1991).

The parties are hereby directed to proceed with their dispute in arbitration.