Ezequiel SOTO–ALVAREZ, Plaintiff

v.

**AMERICAN INVESTMENT AND MANAGEMENT COMPANY (AIMCO), et al., Defendants.**

**Civil No. 07–1983 (JP).**

United States District Court, D. Puerto Rico.

June 25, 2008.

---

Ezequiel Soto–Alvarez, Lares, PR, Pro Se.

Larissa C. Garriga–Cesani, Esq., Morgan, Lewis & Bockius, LLP, Miami, FL, for Defendants.

### OPINION AND ORDER

JAIME PIERAS, JR., Senior District Judge.

The Court has before it Defendant Apartment Investment and Management Company's [1] ("AIMCO") motion to compel arbitration or, in the alternative, to dismiss Plaintiff's claims (**No. 6**). Plaintiff Ezequiel Soto Alvarez ("Soto") has filed no opposition to Defendant AIMCO's motion.

Plaintiff Soto filed the instant complaint in the Court of First Instance of the Commonwealth of Puerto Rico, Utuado Part, alleging that Defendant AIMCO's dismissal of Plaintiff employee violated Article 5A of Puerto Rico's Workplace Accident Compensation Act and Laws 100 and 115 of Puerto Rico. P.R. Laws Ann. tit. 11, § 7; P.R. Laws Ann. tit. 29, §§ 146–151; P.R. Laws Ann. tit. 29, § 194 *et. seq.* For the reasons stated herein, Defendant AIMCO's Motion to compel arbitration is hereby **GRANTED.**

### I. FACTUAL ALLEGATIONS

Plaintiff began his employment with Defendant AIMCO in May 2001, and at all times relevant to the complaint, he held the position of maintenance technician. Plaintiff alleges that due to a lack of employees at AIMCO, he had to perform additional functions that did not form part of his assigned duties. In 2005, because of the long work days and associated work pressure, Plaintiff alleges that he began to suffer a relapse of a prior kidney condition, causing him to be absent from his work at AIMCO on several occasions. Plaintiff alleges that, because of his shift absences, he was questioned by his shift supervisor despite Plaintiff's submission of the corresponding medical certificates to his employer. After a period of hospitalization in 2005, Plaintiff Soto claims that Defendant AIMCO pressured him to return to work immediately or be terminated.

Plaintiff returned to work in June 2005, but was allegedly met with hostile treat-

---

**1.** In his complaint, Plaintiff Soto incorrectly named Defendant as "American Investment and Management Company."

ment by Defendant AIMCO. Plaintiff alleges that he was so upset by the hostile treatment that he stopped working on June 21, 2005, and reported to the State Insurance Fund. Thereafter, Defendant AIMCO terminated Plaintiff Soto on July 13, 2005. Plaintiff argues that he was wrongfully dismissed from his employment with Defendant AIMCO as a result of his medical problems.

## II. LEGAL STANDARD FOR ORDER COMPELLING ARBITRATION

The Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), establishes the validity and enforceability of written arbitration agreements. The FAA provides that a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA expresses a congressional policy in favor of arbitration, and places arbitration agreements on an equal footing with other contracts. *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443, 126 S.Ct. 1204, 163. L.Ed.2d 1038 (2006). The FAA mandates the district court to compel arbitration when the parties have signed a valid arbitration agreement governing the issues in dispute, removing the district court's discretion over whether to compel arbitration or provide a judicial remedy to the parties. 9 U.S.C. § 4; *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The existence of a valid arbitration agreement is premised on the consent of the parties to arbitrate at least some of their claims and thereby forego a judicial remedy for those claims. *McCarthy v. Azure,* 22 F.3d 351, 354–55 (1st Cir.1994), citing *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). ▪ Based on the above principles, the United States Court of Appeals for the

First Circuit has set forth four requirements that must be satisfied for a court to grant a motion to compel arbitration: (1) a valid arbitration agreement must exist; (2) the moving party must be entitled to invoke the arbitration clause; (3) the other party must be bound by the clause; and (4) the claim must fall within the scope of the arbitration clause. *InterGen N.V. v. Grina,* 344 F.3d 134, 142 (1st Cir.2003). The Court notes that as to the first prong of the *InterGen N.V.* test, *supra,* state contract law principles govern the validity of an arbitration agreement. *Campbell v. Gen. Dynamics Gov't Sys. Corp.,* 407 F.3d 546, 551 (1st Cir.2005); *See* 9 U.S.C. § 2. Under Puerto Rico law, the elements of a valid contract are the following: (1) the consent of the contracting parties; (2) a definite object of the contract; and (3) the cause for the obligation. P.R. Laws Ann. tit. 31, § 3391. Under Puerto Rico law, consent of a party is invalid only if "given by error, under violence, by intimidation, or deceit." 31 P.R. Laws Ann. tit. 31, § 3404; *Sánchez–Santiago v. Guess, Inc.,* 512 F.Supp.2d 75, 79 (D.P.R.2007).

## III. ANALYSIS

Defendant AIMCO's moves the Court to compel arbitration based on an arbitration clause contained in the AIMCO Employee Handbook (the "Handbook"), which states, in relevant part, that,

> [A]ny controversy, dispute or question arising out of, in connection with, or in relation to employment, termination of employment, this statement or its interpretation, performance or non-performance, or any breach thereof, shall be determined by arbitration ... in accordance with the then-existing rules of the American Arbitration Association.

Plaintiff Soto received the Handbook at the start of his employment with Defendant AIMCO. As a condition of employ-

ment with Defendant, Plaintiff signed the Conditions of Employment Acknowledgment form on May 23, 2001, indicating that he read and agreed to abide by the policies contained in the Handbook. Because Defendant's motion to compel arbitration is based on an arbitration agreement contained in the Handbook, the Court must now analyze the specific provision in question to determine whether it satisfies the four requirements established by the First Circuit for granting a motion to compel arbitration.

■ As to the existence of a valid arbitration agreement, Plaintiff has not claimed, nor does the record disclose, the existence of error, violence, intimidation, or deceit that would invalidate Plaintiff's consent to the Handbook terms. *See InterGen*, 344 F.3d at 143. Plaintiff signed a form stating that he read and agreed to the contents of the Handbook, which included the arbitration provision. Moreover, agreement to the Handbook terms was a condition of his employment with Defendant AIMCO. The evidence in the record shows that the arbitration agreement between the parties is a valid contractual obligation under Puerto Rico law, and Plaintiff has presented no arguments to the contrary.

The second requirement is satisfied if the party seeking to invoke the arbitration clause is a party to the agreement containing the arbitration provision. *See id.* The Handbook is part of Plaintiff's employment agreement with Defendant AIMCO, and thus AIMCO can properly invoke the Handbook's arbitration provision.

The third requirement is satisfied if the party against whom the moving party seeks to enforce the arbitration agreement is a party to the agreement. *See id.* In the case at hand, Plaintiff Soto signed the Conditions of Employment Acknowledgment form, which explicitly states that the signatory has "read and agree[s] to abide

by the rules of conduct, policies and procedures set forth in the Employee Handbook . . . ." One of the policies set forth in the Handbook is the arbitration provision. Thus, by signing the acknowledgment form, Plaintiff agreed to the arbitration provision and is therefore bound by its terms.

The last inquiry is whether Plaintiff Soto's claims against Defendant AIMCO fall within the scope of the arbitration agreement. Courts have consistently recognized that, given the preference for arbitration embodied in the FAA, arbitration clauses should be interpreted broadly. *See, e.g. Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *AT & T*, 475 U.S. at 649, 106 S.Ct. 1415; *Dean Witter Reynolds, Inc. v. Sánchez Espada*, 959 F.Supp. 73, 79 (D.P.R.1997). The United States Supreme Court has stated that "[a]n order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T*, 475 U.S. at 649, 106 S.Ct. 1415. In this case, the arbitration agreement contained in the Handbook contains broad language, stating that "any" controversy "arising out of, in connection with, or in relation to" employment or discharge shall be submitted to arbitration. *See Carro Rivera v. Parade of Toys, Inc.*, 950 F.Supp. 449, 452 (D.P.R.1996) (recognizing a broad interpretation of language in an arbitration agreement submitting all disputes "arising under" or "related to" the agreement to arbitration). Plaintiff's claims against Defendant AIMCO for discrimination and illegal dismissal arise out of and relate to his employment and termination of employment, and thus fall within the scope of the arbitration agreement. The Court therefore holds that the arbitration agreement contained in Defendant

AIMCO's Handbook and expressly agreed to, in writing, by Plaintiff, is valid and enforceable against the parties.

## IV.  CONCLUSION

In conclusion, the Court hereby **GRANTS** Defendant AIMCO's motion to compel arbitration.  The Court will enter a separate judgment dismissing Plaintiff Soto's complaint without prejudice.

**IT IS SO ORDERED.**