**Buford O. BAKER, et al.**

v.

**PAINE, WEBBER, JACKSON & CURTIS, INC., et al.**

**Civ. A. No. 85–362.**

United States District Court, D. New Jersey.

April 10, 1986.

Clifford W. Starrett, Schenck, Price, Smith & King, Morristown, N.J. for plaintiffs.

Joseph J. Fleischman, Hannoch, Weisman, Roseland, N.J., for defendants Paine, Webber, Jackson & Curtis, Inc., Joseph A. LaFerla and Thomas F. Eggers.

STERN, District Judge.

## OPINION

Plaintiffs are retired airline pilots who invested their retirement funds in discretionary accounts managed by brokers at Paine, Webber, Jackson & Curtis, Inc. Plaintiffs allege that defendants fraudulently induced them to invest in these accounts, that the accounts were willfully mismanaged, that the worth of the accounts was fraudulently misrepresented to them in monthly statements, and that as a result of these acts the value of their investment declined. Plaintiffs state their claims under state law, § 10(b) of the Securities Act of 1934 and Rule 10b–5, and under the RICO statute, 18 U.S.C. § 1962.

■ On this motion, defendants ask this Court to remit all the claims to arbitration. The motion is based on an arbitration clause contained in the investment contracts entered into by the defendants and each of the plaintiffs. There is no allegation that the arbitration clauses—as distinct from the contracts as a whole—were obtained by fraud. If the arbitration clause is otherwise enforceable, therefore, the claim that the contracts were obtained by fraudulent inducement would itself be one for the arbitrators, *Prima Paint Corp. v. Flood and Conklin*, 388 U.S. 395, 403–404, 87 S.Ct. 1801, 1805–1806, 18 L.Ed.2d 1270 (1967).

Plaintiffs raise the following objections to arbitration: (1) the arbitration clause is unconscionable; (2) by its own terms, the clause does not apply to the dispute; (3) public policy forbids the arbitration of § 10(b) and RICO claims. The only one of these objections with any merit is the second. Certain of the claims, as discussed below, will not be remitted to arbitration, because it was evidently not the parties' intent that they should be arbitrated.

The arbitration clause at issue reads as follows:

> Any controversy arising out of the handling of any of the transactions referred to in this agreement shall be settled by arbitration ...

## I. Unconscionability

■ The plaintiffs' argument that the arbitration clause is unconscionable is a makeweight. Courts routinely enforce arbitration clauses in contracts between investors and brokers. Plaintiffs' assert that enforcing the clause would deny them of their right to a hearing in court. The waiver of that right, of course, is the whole point of arbitration. There is nothing unconscionable about enforcing this clause.

## II. The Terms of the Arbitration Clause

This arbitration clause is quite narrowly drafted. It applies only to disputes "arising out of the *handling of transactions referred to in this agreement.*"

■ Most of the acts complained of concern improper investments and the fraudulent reporting of the outcomes of those investments. The claims raised by these actions fall within the language of the clause. Even if there were a question as to the clause's scope, it would be one for the arbitrator to resolve, *Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983).

■ However, plaintiffs also complain that they were fraudulently induced to enter into the contracts. Such fraudulent inducement has nothing to do with the transactions referred to in the agreement, which are purely brokers' transactions in securities on behalf of the plaintiffs. No portion of plaintiffs' claims concerning the alleged acts of fraudulent inducement will be remitted to the arbitrator.

There is no contradiction with this Court's earlier ruling that the alleged acts of fraudulent inducement state a claim under § 10(b). Section 10(b) governs all actions taken "in connection with the sale or purchase of securities", language with a far broader sweep than the contract language at issue here, "arising out of the handling of transactions." *See, e.g., Cunningham v. Dean Whitter Reynolds, Inc.*, 550 F.Supp. 578, 580 (E.D.Cal.1982).

## III. The § 10(b) Claim

In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 182 (1953), the Supreme Court held that agreements to arbitrate claims under § 12(2) of the Securities Act of 1933 are not enforceable. In *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Court "questioned" the applicability of *Wilko* to claims under § 10(b) of the Securities Exchange Act of 1934.

Nonetheless, the Third Circuit, in *dictum*, extended the *Wilko* rule to § 10(b) claims in *Ayres v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 538 F.2d 532, 536 (3d Cir.), *cert. denied*, 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976). The

*Ayres* court argued that § 10(b) was such an important part of the public-law regulation of the securities business that agreements to arbitrate claims under it should not be upheld.

Last year, the Supreme Court again suggested that § 10(b) claims are not governed by the *Wilko* rule, *Dean Whitter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). In a concurring opinion, Justice White asserted that lower court cases rejecting the arbitrability of § 10(b) claims "must be viewed with some doubt," 105 S.Ct. at 1244.

In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, — U.S. —, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), the Court rejected the argument that the importance of a statutory scheme, as determined by a court, could outweigh the stated policy of the Federal Arbitration Act to enforce contractual agreements to arbitrate. In so holding, the Court approvingly quoted Justice White's concurrence in *Byrd*.

The *dictum* in *Ayres* thus does not survive the holding of *Mitsubishi*. Congress did not explicitly forbid arbitration of § 10(b) claims; therefore, § 10(b) claims may be remitted to arbitration in accordance with the intent of the parties. Here, the parties agreed to arbitrate all disputes arising out of defendants' handling of transactions. Plaintiffs' § 10(b) claims, with the exception of those dealing with fraud in the inducement, will be remitted to arbitration.

### IV. The Civil RICO Claim

The leading opinion on this issue, *S.A. Mineracao Da Trindade-Samitri v. Utah International, Inc.*, 576 F.Supp. 566, 574–76 (S.D.N.Y.1983), *aff'd* 745 F.2d 190 (2d Cir.1984), held that the RICO statute implicated a public interest "at least as great as the policy in favor of arbitration." Therefore, it ruled, civil RICO claims would not be remitted to arbitration.

After *Mitsubishi*, the logic of this opinion is no longer valid. Courts which have considered the issue in light of *Mitsubishi* have determined that civil RICO claims are in fact arbitrable, *Jacobson v. Merrill Lynch, Pierce, Fenner and Smith*, 1985–86 Fed.Sec.L.Rep. (CCH) ¶ 92,276 (W.D.Pa.1985) [Available on WESTLAW, DCTU database]; *Finn v. Davis*, 610 F.Supp. 1079, 1087 (S.D.Fla.1985). I believe that these courts are correct. Accordingly, that portion of the RICO claims which are not predicated on acts occurring before the contracts were signed will be remitted to arbitration.

In *Dean Whitter v. Byrd, supra,* the Supreme Court pointed out that arbitration awards do not have the status of *res judicata* in federal court proceedings. However, they do have significant evidentiary effect. For this reason, I will stay that portion of this case that remains in this court until the arbitration proceeding is completed. *Blumenthal v. Dean Whitter Reynolds, Inc.*, No. 84–4799 (D.N.J. July 3, 1983).