**RCM TECHNOLOGIES, INC., Plaintiff,**

v.

**CONSTRUCTION SERVICES ASSOCIATES, INC., f/k/a Computer Software Associates, Inc.; Edwin J. Smith, Defendants.**

**No. CIV.A. 00–5527 (JEI).**

United States District Court, D. New Jersey.

May 21, 2001.

Steven Kudatzky, Bazelon Less & Feldman, P.C., Marlton, NJ, for Plaintiff.

Joseph Edward Sales, Norris, McLaughlin & Marcus, Somerville, NJ, for Defendants.

## OPINION

IRENAS, District Judge:

Presently before the Court is Defendants' Motion to Compel Arbitration and Stay Proceedings. For the reasons set forth below, Defendants' Motion is denied.

### I.

On February 1, 1999, Plaintiff RCM Technology, Inc. ("RCM") and Defendants Construction Service Associates ("CSA"),

formerly known as Computer Software Associates, and Edwin J. Smith, the owner of CSA, entered into an Asset Purchase Agreement ("APA") whereby RCM was to purchase substantially all of CSA's assets. The purchase price for the assets was $6,750,000, subject to certain post-closing adjustments specified by the APA. (APA ¶ 3.1) Pursuant to the agreement, RCM paid $2,500,000 at the closing. (*Id.* ¶ 3.2(i)). The remainder of the purchase price was to be paid as deferred consideration based on the financial performance of the purchased business. (*Id.* ¶ 3.2).

Among the representations and warranties made by Defendants as "a material inducement" for Plaintiff to enter into the APA was a promise that CSA's "closing net operating income' was not less than $1,200,000." (*Id.* ¶ 5; ¶ 5.23). Defendants also warranted that CSA's business had suffered no "materially adverse changes in the business, condition (financial or otherwise, results of operations, properties, assets, liabilities, earnings or net worth....") (*Id.* ¶ 5.5). According to the APA, these representations were conditions precedent to any of Plaintiff's obligations under the contract. (*Id.* ¶ 10.2).

At some point after the execution of the APA, Plaintiff discovered that CSA's closing net operating income was in fact less than $ 1,200,000. Plaintiff claims that Defendants either submitted false numbers reflecting CSA's financial performance through October 1998 or that the Defendants failed to disclose that CSA had suffered "materially adverse changes" prior to the closing. (Pl.'s Opp. at 3).

On October 2, 2000, Plaintiff brought suit in New Jersey Superior Court, asserting claims of fraudulent inducement, negligent misrepresentation, unjust enrichment, and breach of contract. Subsequently, on November 9, 2000, Defendants removed the matter to this Court. On November 17, 2000, Defendants simultaneously filed an Answer and the instant Motion. Defendants seek to stay these proceedings and compel arbitration based on the APA's arbitration clause, which provides in relevant part that "[i]f a dispute arises as to interpretation of this Agreement, it shall be decided finally by three arbitrators in an arbitration proceeding...." (*Id.* ¶ 12). The agreement further provides for arbitration to be held in Phoenix, Arizona.[1]

## II.

The Supreme Court has long recognized that the Federal Arbitration Act embodies a strong federal policy favoring arbitration. *See Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 424–25, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Pursuant to the Act, an arbitration clause in a "transaction involving commerce" is "valid, irrevocable, and enforceable" except on "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the Act requires a court in which suit has been brought on an issue referable to arbitration under a written arbitration agreement "to stay the court action pend-

---

**1.** Thus, this matter is complicated by this Court's lack of authority to compel arbitration outside of its district in the contractually chosen forum of Arizona. *See Optopics Laboratories Corp. v. Nicholas,* 947 F.Supp. 817 (D.N.J.1996). However, if the Court found the matter to be arbitrable, it could transfer the matter to district court in Arizona. Nevertheless, because, as discussed below, the Court finds that the instant dispute does not fall within the scope of the arbitration clause, the Court need not concern itself with these contingencies.

ing arbitration once it is satisfied that the issue is arbitrable under the agreement." *Prima Paint Corp.*, 388 U.S. at 400, 87 S.Ct. 1801 (discussing 9 U.S.C. § 3).[2] Upon motion by "[a] party aggrieved by the alleged failure, neglect, or refusal" to honor such an arbitration agreement, Section 4 directs the court "to order arbitration once it is satisfied that an agreement for arbitration has been made and has not been honored." *Id.* at 400, 87 S.Ct. 1801 (discussing 9 U.S.C. § 4).

There is no dispute that the APA involves interstate commerce or that the construction of its arbitration clause is governed by the Federal Arbitration Act. (Pl.'s Opp. at 5; Defs.' Br. at 4). However, the parties disagree as to the result under the Act. Defendants urge this Court to stay litigation and compel arbitration while Plaintiff contends that its claims do not fall within the scope of the APA's arbitration clause.

 The Supreme Court has instructed that "the first task for a court asked to compel arbitration of a dispute is to determine whether the parties agree to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). That decision must be made "by applying the 'federal substantive law of arbitrability, applicable to any arbitration within the coverage of the Act.'" *Id.* (citations omitted). Further, it must be made "with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. 927. The Arbitration Act establishes that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Id.* at

24–25, 103 S.Ct. 927. However, the Supreme Court has made clear that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Nevertheless, the Court has instructed that "[a]n order to arbitration should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 582–83, 80 S.Ct. 1347 (discussing arbitration under Labor Management Relations Act). Accordingly, doubts as to arbitrability are to be "resolved in favor of coverage." *Id.* at 583, 80 S.Ct. 1347.

 Thus, a broad arbitration clause carries with it a certain presumption of arbitrability. *See Kiefer Specialty Flooring v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir.1999); *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir.1988) (citations omitted).

> With narrower clauses, however, a court considering the appropriate range of arbitrable issues must "consider whether the [question at] issue is on its face within the purview of clause." ... In determining whether a particular dispute falls within the scope of a narrow and specific arbitration clause, "[t]he tone of the clause as a whole must be considered."

*McDonnell Douglas Fin. Corp.*, 858 F.2d at 832 (citations omitted). Where an agreement to arbitrate is limited in its substantive scope, courts should not allow

---

**2.** In *Prima Paint,* the parties agreed to a broad arbitration clause, which read in part:
Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the rules then obtaining of the American Arbitration Association....

" 'the federal policy favoring arbitration ... to override the will of the parties by giving the arbitration clause greater coverage than the parties intended.' " *Paine-Webber, Inc. v. Hartmann,* 921 F.2d 507, 513 (3d Cir.1990) (quoting *National R.R. Passenger Corp. v. Boston & Maine Corp.,* 850 F.2d 756, 760–61 (D.C.Cir.1988)). As indicated above, the arbitration clause at issue here is by its terms limited to "disputes as to interpretation" of the APA.[3] The issue before this Court is thus whether Plaintiff's claims of fraudulent inducement, negligent misrepresentation, unjust enrichment, and breach of contract fall within the purview of this relatively narrow arbitration clause. In addressing that issue, this Court must be respectful of the parties' intent. *See McDonnell Douglas Fin. Corp.,* 858 F.2d at 832.

According to Defendants, the parties plainly "envisioned that all disputes relating to the meaning and application of the various provision of the APA would be submitted" to arbitration. (Defs.' Br. at 3). Further, Defendants contend that any resolution of RCM's breach of contract claims "necessarily requires 'interpretation of the Agreement,' " thereby invoking the arbitration clause of the APA. (*Id.*). Plaintiff counters that the clause is narrow and "contains an explicit and restrictive definition of the disputes" that the parties contracted to submit to arbitration. (Pl.'s Opp. at 8).

## A) Fraudulent Inducement and Negligent Misrepresentation Claims

■ The Supreme Court has held that if there is no claim that fraud was directed at the arbitration clause itself, claims of fraudulent inducement are arbitrable. *See Prima Paint,* 388 U.S. at 402–04, 87 S.Ct. 1801. However, that does not mean that the question of whether Plaintiff's claims of fraudulent inducement and negligent misrepresentation fall within the scope of the APA's limited arbitration provision must be answered in the affirmative. In fact, that inquiry must be answered negatively.

In *Prima Paint,* the Supreme Court held that an arbitration clause referring "[a]ny controversy or claim arising out of or relating to" the agreement covered the plaintiff's claim of fraud in the inducement. 388 U.S. at 398, 406, 87 S.Ct. 1801. Because the plaintiff raised no claim that the defendant had fraudulently induced it to enter into the arbitration agreement, the Court held that the claim that the defendant had fraudulently procured the contract was one for the arbitrator. *Id.* at 406, 87 S.Ct. 1801. As in *Prima Paint,* Plaintiff here does not contend that the arbitration clause itself was procured by fraud. However, unlike the arbitration clause in that case, the clause at issue here is limited to disputes as to "interpretation." This narrow provision is not broad enough to encompass claims of fraud in the inducement. *See generally* Jay M. Zitter, *Claim of fraud in inducement of contract as subject to compulsory arbitration clause contained in contract,* 1982 WL 198591, 11 A.L.R.4th 774 (1982) (discussing language held to include such claims and language held not to include such claims).

In *Baker v. Paine, Webber, Jackson & Curtis,* 637 F.Supp. 419 (D.N.J.1986), the Court was faced with an arbitration clause covering "disputes 'arising out of the handling of transactions referred to in this agreement.' " *Id.* at 421. Among other contentions, the plaintiffs there claimed that they were fraudulently induced to invest in certain funds managed by the de-

---

**3.** Compare this arbitration clause with the clause at issue in *Prima Paint* which was held to cover claims of fraudulent inducement. *See supra* note 1.

fendants. *Id.* at 420–21. The Court declined to remit the plaintiffs' claims of fraudulent inducement to the arbitrator because "[s]uch fraudulent inducement ha[d] nothing to do with the transactions referred to in the agreement...." *Id.* at 421. Similarly, here, Plaintiff's claims of fraud and negligent misrepresentation have nothing to do with the interpretations of the terms of the APA. The very terms of the arbitration clause "plainly manifests the parties intent to limit arbitration to the interpretation...." *Coady v. Ashcraft & Gerel,* 223 F.3d 1, 10 (1st Cir.2000) (discussing arbitration clause covering "ambiguities or questions of interpretation"). Thus, because Plaintiff's claims of fraudulent inducement and negligent misrepresentation are not such disputes, it would be improper for this Court to refer them to arbitration.

## B) Unjust Enrichment Claim

 Plaintiff's quantum meruit claim is likewise not within the ambit of the arbitration agreement. Recovery on a theory of unjust enrichment is predicated on the absence of a valid contract on the same subject. *In re Penn Central Transp. Co.,* 831 F.2d 1221 (3d Cir.1987) (citing *Mediterranean Enter., Inc. v. Ssangyong Corp.,* 708 F.2d 1458, 1464 (9th Cir.1983)). Thus, an unjust enrichment claim inherently does not involve contract "interpretation." However, this is not to say that an unjust enrichment claim could not properly be referred to arbitration but only that Plaintiff's may not. Parties to an arbitration agreement covering disputes as to "interpretation" of the contract cannot not be forced to arbitrate such claims.

## C) Breach of Contract Claim

Defendants argue that a determination of the breach of contract claim necessarily requires an interpretation of the terms "normalized," "closing net operating income," and "material adverse changes." Thus, according to Defendants, the claim should properly be decided by an arbitrator. Although Defendants' presents a stronger argument for arbitrability on this claim than the others, nevertheless, Plaintiff's breach of contract claim does not fall within the purview of the arbitration clause.

 In theory, every breach of contract claim conceivably raises issues of contract interpretation. However, not every breach of contract claim properly falls within the ambit of an arbitration clause limited to contract interpretation. It is not enough to label Plaintiff's claim as a "breach of contract claim" and find that it thus falls within the scope of the arbitration agreement. *See Mutual Benefit Life Ins. Co. v. Zimmerman,* 783 F.Supp. 853, 869 (D.N.J.1992). Determining whether a dispute is within the scope of an arbitration clause, "the focus is on the 'factual allegations in the complaint rather than the legal causes of action asserted.'" *Id.* at 869 (D.N.J.1992).

 Here, the bases of Plaintiff's claim are defendants' alleged false representations of CSA's Closing Net Operating Income and/or their purported "concealment of material adverse changes suffered by [CSA] prior to the execution of the APA." (Pl's Opp. at 11). Thus, a determination of the claim will require a determination of the truth of CSA's representation of its Closing Net Operating Income and of whether the company suffered from any material financial changes not disclosed to Plaintiff. Such determinations are not truly issues of "interpretation." Consequently, Plaintiff's breach of contract claim does not fall within the scope of the arbitration agreement. *See Coady,* 223 F.3d at 10 (finding clause limited to "ambiguities or questions of interpretation" did not encom-

pass breach of contract claims involving no issues of contract interpretation).

## III.

For the reasons set forth above, Defendants' Motion is Denied. The Court will issue an appropriate order.