Thomas DENNEY, R. Thomas Weeks, Norman R. Kirisits, Kathryn M. Kirisits, TD Cody Investments, L.L.C., RTW Investments, L.L.C., NRK Syracuse Investments, L.L.C., DKW Partners, DKW Lockport Investors, Inc., Donald A. DeStefano, Patricia J. DeStefano, DD Tiffany Circle Investments L.L.C., Tiffany Circle Partners, Diamond Roofing Company, Inc., Jeff Blumin, JB Hilltop Investments L.L.C., Kyle Blumin, KB Hoag Lane Investments, L.L.C., L. Michael Blumin, MB St. Andrews Investments, L.L.C., Fayetteville Partners, and Laurel Hollow Investors, Inc., on their own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

JENKENS & GILCHRIST, a Texas Professional Corporation, Jenkens & Gilchrist, an Illinois Professional Corporation, BDO Seidman, L.L.P., Pasquale & Bowers, L.L.P., Cantley & Sedacca, L.L.P., Dermody, Burke, and Brown, Certified Public Accountants, PLLC, Paul M. Daugerdas, Paul

---

Shanbrom, Edward Sedacca, Deutsche Bank AG, and Deutsche Bank Securities, Inc., d/b/a Deutsche Bank Alex Brown, A Division of Deutsche Bank Securities, Inc., Defendants.

No. 03 Civ. 5460(SAS).

United States District Court, S.D. New York.

Dec. 12, 2005.

David R. Deary, W. Ralph Canada, Deary Montgomery Defeo & Canada, L.L.P., Dallas, Texas, Jeffrey Daichman, Kane Kessler, New York, New York, Joe R. Whatley, Jr., Othni Lathram, Whatley Drake, L.L.C., Birmingham, Alabama, Er-

nest Cory, Cory Watson Crowder & Degaris, P.C., Birmingham, Alabama, for Plaintiffs.

Lawrence M. Hill, Seth C. Farber, Dewey Ballantine, L.L.P., New York, New York, for Defendants Deutsche Bank AG and Deutsche Bank Securities.

Michael R. Young, I. Bennett Capers, Anamika Samanta, Wilkie Farr & Gallagher, L.L.P., New York, New York, Richard Hans, Cary Samowitz, Piper Rudnick, L.L.P., New York, New York, for Defendants BDO Seidman, L.L.P. and Paul Shanbrom.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiffs, members of a putative class, allege that defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") and are liable for damages and other relief arising from unjust enrichment, breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duties, fraud, negligent misrepresentation, professional malpractice, unethical, excessive and illegal fees, and

conspiracy.[1] In an Opinion and Order dated April 30, 2004 (the "April 30, 2004 Opinion"), this Court denied defendants' motion to compel arbitration, finding that the arbitration clauses were unenforceable because the underlying consulting agreements were mutually fraudulent, and alternatively, that the services the BDO Defendants provided to plaintiffs fell outside the scope of the consulting agreements.[2] The Court of Appeals reversed this Court's factual findings and vacated this Court's order as to those parties that were signatories to the consulting agreements.[3] The Court of Appeals remanded the action to this Court for consideration of *first*, "whether plaintiffs were estopped from avoiding arbitration with the Deutsche Bank defendants, non-signatories to the consulting agreements" and *second*, "whether the non-signatory plaintiffs should be compelled to arbitrate their claims against defendants alongside the signatory plaintiffs." [4]

Deutsche Bank now moves for a stay of this action pending arbitration pursuant to section 3 of the Federal Arbitration Act ("FAA").[5] For the reasons set forth in

**1.** *See* Second Amended Complaint. Lead Plaintiffs in this action, acting on behalf of themselves and all others similarly situated, include: Thomas Denney, R. Thomas Weeks, Norman Kirisits, Kathryn M. Kirisits, NRK Syracuse Investments, L.L.C., RTW High Investments, L.L.C., TD Cody Investments, L.L.C., DKW Lockport Investments, Inc., DKW Partners (collectively, the "Denney Plaintiffs"); Donald A. DeStefano, Patricia J. DeStefano, DD Tiffany Circle Investments, L.L.C., Tiffany Circle Partners, Diamond Roofing Company, Inc. (collectively, the "DeStefano Plaintiffs"); Jeff Blumin, Kyle Blumin, L. Michael Blumin, JB Hilltop Investments, L.L.C., KB Hoag Lane Investments, L.L.C., MB St. Andrews Investments, L.L.C., Fayetteville Partners, and Laurel Hollow Investors, Inc. (collectively, the "Blumin Plaintiffs").

Defendants include: Jenkens & Gilchrist, a Texas Professional Corporation, Jenkens &

Gilchrist, an Illinois Professional Corporation, and Paul M. Daugerdas, (collectively, "Jenkens"); BDO Seidman, L.L.P. ("BDO"), Paul Shanbrom (together with BDO, the "BDO Defendants"); Deutsche Bank AG, and Deutsche Bank Securities, Inc. d/b/a Deutsche Bank Alex Brown (collectively, "Deutsche Bank"); Cantley & Sedacca, L.L.P., Edward Sedacca (collectively, "Cantley"); Pasquale & Bowers ("Pasquale"); and Dermody, Burke, and Brown ("Dermody").

**2.** *See Denney v. Jenkens & Gilchrist*, 340 F.Supp.2d 338 (S.D.N.Y.2004), *rev'd sub nom. Denney v. BDO Seidman L.L.P.*, 412 F.3d 58 (2d Cir.2005).

**3.** *See Denney*, 412 F.3d at 71.

**4.** *Id.* at 70.

**5.** 9 U.S.C. § 3.

this opinion, Deutsche Bank's motion is denied. The BDO Defendants have withdrawn their motion to compel arbitration against non-signatory plaintiffs,[6] and therefore, this Court does not reach the second issue presented on remand.

## II. BACKGROUND

### A. Facts

The factual allegations giving rise to this litigation are set forth in detail in the April 30, 2004 Opinion, and familiarity with that opinion is presumed.[7] In brief, plaintiffs represent a class of investors who, between 1999 and 2001, engaged in a tax strategy known as Currency Options Bring Reward Alternatives, or "COBRA." The gravamen of plaintiffs' allegations is that defendants knew that the tax strategies lacked economic substance and would be held invalid by the IRS, but falsely held them out to plaintiffs as legitimate. The strategy was developed by Jenkens[8] and marketed by the BDO Defendants to the wealthy clients of Pasquale and Dermody.[9] Jenkens, and later Cantley, wrote legal opinion letters attesting to COBRA's validity and legality. Plaintiffs opened accounts with Deutsche Bank at the recommendation of Jenkens. Deutsche Bank promoted the strategy, counseled plaintiffs, and carried out the underlying securities transactions on plaintiffs' behalf. Plaintiffs claim that defendants are jointly and severally liable for damages in the amount of fees paid to defendants in connection with the COBRA transactions and tax returns, and fees incurred as a result of federal and state audits.

### B. The Consulting Agreements

On October 8, 1999, plaintiff L. Michael Blumin, on behalf of Jefyle Equipment Corp., Inc., entered into a consulting agreement with BDO (the "Blumin Agreement"). The Blumin Agreement required BDO to provide "certain tax, financing and business consulting services" in connection with the expansion of Jefyle Equipment Corporation's "business operations into new strategic markets."[10]

On October 12, 1999, Thomas Denney, R. Thomas Weeks, Norman R. Kirisits, and BDO executed a similar consulting agreement (the "Denney Agreement"). The Denney Agreement required BDO to provide "consulting services in conjunction with [Denney, Weeks, and Kirisits's transfer of business operations], including assistance in structuring the Transaction, assisting the client in determining a tax treatment for the Transaction, and [preparing] the 1999 and 2000 income tax returns that would reflect the Transaction."[11]

Finally, on November 2, 1999, plaintiff Diamond Roofing Co., Inc. entered into a

---

6. The plaintiffs and BDO Defendants informed the court by letter dated November 18, 2005 of their intent to settle the matter and their request that the court take no action on the BDO Defendants' motion to compel arbitration.

7. *See Denney*, 340 F.Supp.2d at 341–46. *See also Denney*, 412 F.3d at 61–65.

8. On February 18, 2005, this Court approved a settlement between plaintiffs and Jenkens, and certified a class solely for the purpose of that settlement. *See Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317 (S.D.N.Y.2005).

9. This Court ordered voluntary dismissal of the action as to Pasquale and Dermody on January 5, 2005.

10. Consulting Agreement between BDO and Jefyle Equipment Corp., Ex. 3 to Affidavit of Lawrence M. Hill, counsel to the Deutsche Bank Defendants ("Hill Aff."), ¶ 2.

11. Consulting Agreement between BDO and Denney, Weeks, and Kirisits, Ex. 1 to Hill Aff., at "whereas" clauses and ¶ 2.

consulting agreement with BDO (the "DeStefano Agreement"). The DeStefano Agreement required BDO to provide services to Diamond Roofing Company in connection with the expansion of its "business operations into new strategic markets." [12] Specifically, BDO was to provide the same services to Diamond Roofing Company that it was providing to Jefyle Equipment Corporation pursuant to the Blumin Agreement.[13]

Each agreement required signatory plaintiffs to pay certain fees in consideration for BDO's consulting services.[14] All three agreements (collectively, the "BDO Agreements") contained identical mandatory arbitration clauses:

> If any dispute, controversy or claim arises in connection with the performance or breach of this Agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of New York, and the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association ("AAA") except that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitration panel,

and shall take place in the city in which the BDO office providing the relevant Services exists, unless the parties agree to a different locale.[15]

Deutsche Bank is not a party to any BDO Agreement.

## III. APPLICABLE LAW

 Section 3 of the FAA requires a court to enter a stay in a case where the asserted claims are "referable to arbitration" by written agreement.[16] "Because arbitration is a matter of contract, exceptional circumstances must apply" before a court will allow a non-contracting party to impose a contractual agreement to arbitrate.[17] A non-signatory may compel arbitration on an estoppel theory, where (i) there is a close relationship between the parties and controversies involved and (ii) the signatory's claims against the non-signatory are " 'intimately founded in and intertwined with the underlying' " agreement containing the arbitration clause.[18] The Court of Appeals has already found that plaintiffs' conspiracy allegations establish a "close relationship" between the Deutsche Bank Defendants and BDO Defendants.[19]

 "The Second Circuit has stressed, however, that it is not the case that 'a claim against a co-conspirator of [the party

---

**12.** Consulting Agreement between BDO and Diamond Roofing Co., Inc., Ex. 2 to Hill Aff., at "whereas" clauses and ¶ 2.

**13.** *See id.*

**14.** *See* Blumin Agreement ¶ 3; Denney Agreement ¶ 3; DeStefano Agreement ¶ 3.

**15.** Blumin Agreement ¶ 7(d); Denney Agreement ¶ 8(d); DeStefano Agreement ¶ 7(d).

**16.** 9 U.S.C. § 3.

**17.** *Miron v. BDO Seidman, L.L.P.*, 342 F.Supp.2d 324 (E.D.Pa.2004) (citing *Thomson–CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir.1995)).

**18.** *JLM Indus. v. Stolt–Nielsen SA*, 387 F.3d 163, 177 (2d Cir.2004) (quoting *Thomson–CSF, S.A.*, 64 F.3d at 779). *Accord Camferdam v. Ernst & Young Int'l, Inc.*, No. 02 Civ. 10100, 2004 WL 307292, at *6 (S.D.N.Y. Feb.13, 2004) (describing inquiry as a two prong test); *Chase Mortgage Co.-West v. Bankers Trust Co.*, No. 00 Civ. 8150, 2001 WL 547224, at *2–3 (S.D.N.Y. May 23, 2001) (same).

**19.** *Denney,* 412 F.3d at 70 (plaintiffs are estopped from "arguing that the Deutsche Bank and BDO defendants lack the requisite close relationship, or that plaintiffs' claims against the Deutsche Bank defendants are not connected to Deutsche Bank's relationship with BDO") (quotation marks omitted).

entitled to compel arbitration] will *always* be intertwined to a degree sufficient to work an estoppel.' " [20] This Court must determine "whether plaintiffs' claims against the Deutsche Bank defendants are 'intimately founded in' or 'intertwined with' the underlying obligations of the consulting agreements." [21] Claims are intertwined "where the merits of an issue between the parties [i]s bound up with a contract binding one party and containing an arbitration clause." [22]

The Second Circuit has been hesitant to set formalistic rules for the estoppel inquiry, holding that it "is fact-specific" and requires "careful review of 'the relationship among the parties, the contracts they signed ... and the issues that had arisen' among them." [23] Courts have found claims to be intertwined where the nonsignatory had no obligations under the agreement containing the arbitration clause,[24] where the intertwined claims did not require interpretation of the agreement,[25] where the

signatory's claims did not exclusively rely on the agreement,[26] and where the intertwined claims may not have been meritorious.[27] At a minimum, the signatory's claims must " 'make[ ] reference to or presume[ ] the existence of the written agreement.' " [28]

■ The purpose of the doctrine of equitable estoppel "is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from 'rely[ing] on the contract when it works to [his] advantage [by establishing the claim], and repudiat[ing] it when it works to [his] disadvantage [by requiring arbitration].' " [29] " 'The plaintiff's *actual dependence* on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the sine qua non of an appropriate situation for applying equitable estoppel.' " [30] Although the Second Circuit has not expressly adopted this rule, when the Second Circuit has found a plaintiff estopped from avoiding arbitration, the

**20.** *Stechler v. Sidley Austin Brown & Wood,* 382 F.Supp.2d 580, 591 (S.D.N.Y.2005) (quoting *JLM Indus.,* 387 F.3d at 177 (emphasis added)).

**21.** *Id.*

**22.** *JLM Indus.,* 387 F.3d 163, 178 n. 7 (citing *Choctaw Generation Ltd. v. Am. Home Assurance Co.,* 271 F.3d 403, 406 (2d Cir.2001)).

**23.** *Id.* at 177–78 (quoting *Choctaw Generation Ltd.,* 271 F.3d at 406).

**24.** *See Chase Mortgage Co.-West,* 2001 WL 547224, at *2 (citing *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 757 (11th Cir.1993)).

**25.** *See JLM Indus.,* 387 F.3d at 178 (alleged antitrust violation required no contract interpretation).

**26.** *See Sunkist Soft Drinks, Inc.,* 10 F.3d at 758 (although the plaintiff did not "rely exclusively on the [underlying] agreement to support its claims, each claim presum[ed] the existence of such an agreement").

**27.** *See Astra Oil Co. v. Rover Navigation, Ltd.,* 344 F.3d 276, 281 (2d Cir.2003) (courts need not evaluate the "ultimate merit" of the claims).

**28.** *JLM Indus.,* 387 F.3d at 178 (quoting *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999)). *Accord Sunkist Soft Drinks, Inc.,* 10 F.3d at 758 ("each party must rely on the terms of the written agreement in asserting their claims").

**29.** *In re Humana Inc. Managed Care Litig.,* 285 F.3d 971, 976 (11th Cir.2002), *rev'd on other grounds sub nom. PacifiCare Health Sys. v. Book,* 538 U.S. 401, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003) (quoting *Tepper Realty Co. v. Mosaic Tile Co.,* 259 F.Supp. 688, 692 (S.D.N.Y.1966)).

**30.** *Miron,* 342 F.Supp.2d at 333 (quoting *In re Humana Inc. Managed Care Litig.,* 285 F.3d at 976). *Accord Massen v. Cliff,* No. 02 Civ. 9282, 2003 WL 2012404, at *4 (S.D.N.Y. May 1, 2003).

plaintiff's claims depended in substantial part on the existence of an agreement that contained an arbitration clause.[31]

## IV. DISCUSSION [32]

■ Plaintiffs' claims against Deutsche Bank are not intimately founded in or intertwined with the BDO Agreements. In *Miron v. BDO Seidman, LLP*, a case stemming from a tax shelter similar to the one at issue here, the Eastern District of Pennsylvania also denied a motion by certain nonsignatory Deutsche Bank defendants to compel arbitration.[33] The court held that "[w]ere this Court to find the BDO Agreement void, invalid, or unenforceable, Plaintiffs would still have valid causes of action against the Deutsche Bank Defendants grounded both in common law and statutory remedies."[34] Here,

plaintiffs expressly exclude Deutsche Bank from their claim for breach of contract.[35] Plaintiffs could allege the same causes of action against Deutsche Bank were the BDO Agreements void.

Deutsche Bank argues that plaintiffs' claims are intertwined with the BDO Agreements because plaintiffs allege that all defendants conspired to fraudulently induce plaintiffs to retain BDO and pay unreasonable fees to BDO.[36] Deutsche Bank also points out that plaintiffs seek to recover fees paid pursuant to the BDO Agreements not only from BDO, but also from Deutsche Bank on the grounds that all defendants are jointly and severally liable.[37] But this does not establish the "quantum of 'intertwined-ness'" sufficient to work an estoppel.[38] Plaintiffs do not allege that Deutsche Bank induced the

---

**31.** *See JLM Indus.*, 387 F.3d at 178 (signatory alleged antitrust injury stemming from price terms of agreements containing arbitration clauses signed by subsidiary of nonsignatory defendant); *Astra Oil Co.*, 344 F.3d at 280–81 (nonsignatory alleged breach of duties under agreement containing arbitration clause signed by defendant and nonsignatory's affiliate); *Choctaw Generation Ltd.*, 271 F.3d at 407 (controversy between signatory and nonsignatory required interpretation of liquidated damages provision of contract containing arbitration clause); *Smith/Enron Cogeneration Ltd. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir.1999) (signatory claimed that nonsignatories, inter alia, fraudulently induced agreement containing an arbitration clause).

**32.** Plaintiffs argue that Deutsche Bank Securities is prohibited under NASD rules from compelling plaintiffs to arbitrate because plaintiffs are members of a class. NASD rules provide that any claim filed by a member of a putative class action in federal court "is ineligible for arbitration at the Association" and that "[n]o member or associated person shall seek to enforce any agreement to arbitrate against a customer ... who ... is a member of a putative or certified class with respect to any claims encompassed by the class action." *See* Plaintiffs' Brief in Opposition to the Deutsche Bank Defendants' Motion

to Stay the Proceedings Pursuant to Section 3 of the Federal Arbitration Act at 3 n. 3 (citing NASD Rules 10301(2), (3)). This Court declines to apply the NASD rules here, because Deutsche Bank has not moved to compel arbitration by the NASD and is not seeking to enforce any agreement, but rather is seeking equitable relief.

**33.** *See Miron*, 342 F.Supp.2d at 333–34. *See also Heller v. Deutsche Bank AG*, No. 04 Civ. 3571, 2005 WL 665052, at *5 (E.D.Pa. Mar.17, 2005).

**34.** *Miron*, 342 F.Supp.2d at 333–34.

**35.** *See* Plaintiffs' Second Amended Class Action Complaint ("Compl."), at 154.

**36.** *See* Deutsche Bank AG's and Deutsche Bank Security Inc.'s Memorandum of Law in Support of their Motion to Stay Proceedings Pursuant to Section 3 of the Federal Arbitration Act ("Deutsche Bank Mem.") at 10 (citing Compl. ¶¶ 64, 261, 305, 388–389).

**37.** *See id.* (citing Compl. ¶¶ 388–393).

**38.** *Stechler*, 382 F.Supp.2d at 592 n. 86 (claims not intertwined to a degree sufficient to work an estoppel where injuries arose indirectly from the purposes for which the agree-

BDO Agreements.[39] Deutsche Bank's alleged role in the conspiracy was to advise plaintiffs on the "nature, structure and potential financial returns" of the COBRA transactions and execute those transactions for plaintiffs.[40] Plaintiffs allege that "the Deutsche Defendants had only limited contact with the Plaintiffs and Class Members, largely consisting of whatever conversations were necessary to get the forms completed and the money wired to the Deutsche Defendants, as fiduciaries for the Plaintiffs, to enter into the [COBRA transactions] and pay the participants' fees."[41] The claim for fees paid pursuant to the BDO Agreements is not a substantial component of plaintiffs' claim against Deutsche Bank.

Plaintiffs are not estopped from avoiding arbitration with Deutsche Bank because they do not allege that the BDO Agreements were integral to the fraudulent scheme. It is not sufficient that the dispute between plaintiffs and Deutsche Bank is related to consulting services provided by BDO pursuant to the BDO Agreements. Although some courts have defined "intertwined" broadly enough to encompass a situation such as this,[42] in those cases the plaintiffs' claims were integrally related to the agreements containing arbitration clauses.[43] Although the Court of Appeals held that the tax advice provided by BDO fell "well within the scope of the consulting agreements,"[44] this does not equate to a finding that those agreements were central to the conspiracy alleged here.

Nor is it sufficient that plaintiffs allege that Deutsche Bank is part of a civil conspiracy including BDO.[45] In *Camferdam v. Ernst & Young International*, another case involving COBRA tax shelters, the court held that plaintiffs' allegations of a "civil conspiracy" were "sufficient to satisfy the first prong of the alternative estoppel test," by proving an agency relationship between the signatory and nonsignatory defendants.[46] But the court did not find the conspiracy allegations sufficient to satisfy the second prong of the test.[47] Rather,

ments were entered into, rather than from the terms of the agreements themselves) (quoting *JLM Indus.*, 387 F.3d at 178).

**39.** Plaintiffs allege the BDO Defendants used Deutsche Bank as a "front" to negotiate fees for the COBRA transactions. *See* Compl. ¶ 82. Plaintiffs do not allege that this strategy was used with named plaintiffs. *See id.* ¶ 83 ("[T]his particular approach may not have been utilized with the named Plaintiffs").

**40.** Compl. ¶ 114.

**41.** *Id.*

**42.** *See, e.g., Chase Mortgage Co.-West*, 2001 WL 547224, at *2 ("the test is whether the signatory's claims arise under the 'subject matter' of the underlying agreement") (citing *Smith/Enron Cogeneration Ltd.*, 198 F.3d at 98); *In re Currency Conversion Fee Antitrust Litig.*, 265 F.Supp.2d 385, 402 (S.D.N.Y.2003) (inquiry is "whether the signatory's claims arise under the 'subject matter' of the under-

lying agreement") (citing *Choctaw Generation Ltd.*, 271 F.3d at 406).

**43.** *See, e.g., Chase Mortgage Co.-West*, 2001 WL 547224, at *2 (claims against nonsignatory were dependent on claims against signatory based on signatory's servicing of loans under agreement containing arbitration clause); *In re Currency Conversion Fee Antitrust Litig.*, 265 F.Supp.2d at 402 (claims against nonsignatory parents were dependent on claims against signatory subsidiaries for price fixing of currency fees on credit cards issued under cardholder agreements containing arbitration clauses).

**44.** *Denney*, 412 F.3d at 70.

**45.** *See Stechler*, 382 F.Supp.2d at 580 (citing *JLM Indus.*, 387 F.3d at 177).

**46.** *Camferdam*, 2004 WL 307292, at *6.

**47.** *See id. Cf. In re Humana Inc. Managed Care Litig.*, 285 F.3d at 976 ("A plaintiff's

the second prong was satisfied because the court found that plaintiffs' allegations—that nonsignatory defendants conspired to promote COBRA tax shelters—were intertwined with agreements outlining the COBRA strategy and containing arbitration clauses.[48] Unlike the agreements in *Camferdam*, the BDO Agreements do not outline the COBRA tax strategy that is at the center of plaintiffs' allegations.[49] The BDO Agreements are only collaterally related to plaintiffs' claims against Deutsche Bank.[50]

## V. CONCLUSION

For the foregoing reasons, the Deutsche Bank's motion is denied. The Clerk of the Court is directed to close this motion [Docket No. 231].

SO ORDERED.

---

allegations of collusive behavior between the signatory and nonsignatory parties do not automatically compel a court to order arbitration against the nonsignatory defendant.").

**48.** *See Camferdam*, 2004 WL 307292, at *1, 6–7.

**49.** *See id.* at *1. The BDO Agreements required that BDO provide general tax and consulting services without specifying any particular tax strategy. *See* BDO Agreements ¶ 2.

**50.** *See Stechler*, 382 F.Supp.2d at 580 (distinguishing *Camferdam* on the grounds that "the court permitted non-signatory defendants to compel arbitration on the basis of arbitration clauses in agreements that expressly covered the provision of tax advice, whereas, here, Brown & Wood seeks to compel arbitration on the basis of agreements that are only collaterally related to plaintiffs' claims.").